618 A.2d 426

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Harold DAVIS.**

Superior Court of Pennsylvania.

Argued Sept. 9, 1992.

Filed Dec. 18, 1992.

George S. Leone, Asst. Dist. Atty., Philadelphia, for Com., appellant.

Paul M. George, Asst. Public Defender, Philadelphia, for appellee.

Before ROWLEY, President Judge, and CAVANAUGH, McEWEN, DEL SOLE, BECK, TAMILIA, KELLY, POPOVICH and FORD ELLIOTT, JJ.

TAMILIA, Judge:

This appeal is taken by the Commonwealth from the Order of April 17, 1991, suppressing evidence seized as a result of the arrest of appellee, Harold Davis.[1]

The facts underlying this case are not in dispute and are as follows. On the evening of May 26, 1989, Philadelphia Police Sergeant Edward Reilly was on duty with two other officers, assigned to provide security to a neighborhood organization cleaning up a public park at 3400 Brandywine Street. As he patrolled the park, Sergeant Reilly observed appellee with two other men in the rear of the park. Appellee had finished taking a puff from a cigarette and was handing it to the other men, who were facing Sergeant Reilly. The two men declined appellee's offer, and when he saw Sergeant Reilly four or five feet away he discarded the cigarette. From his police experience, Sergeant Reilly recognized the aroma from the cigarette as marijuana. The sergeant stopped and searched the man and discovered a bag of marijuana and a capsule of "crack" cocaine on appellee's person. The sergeant then arrested appellee for possession of marijuana,[2] and he was charged subsequently with knowing and intentional possession of controlled substances.[3]

Without delving into the procedural history of this case as it made its way to this Court, the issue now before us is whether the suppression court erred in classifying possession of marijuana as a summary offense rather than a misdemeanor, thus invalidating the arrest of appellee and requiring the suppres-

---

1. This case is properly before us given the Commonwealth's certification that the suppression Order terminates or substantially handicaps its prosecution of appellee. *Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985).

2. 35 P.S. § 780–113(a)(31).

3. *Id.,* § 780–113(a)(16).

sion of all evidence seized as a result of the arrest.[4]

When reviewing the trial court's ruling on a suppression motion we must

> determine whether the factual findings are supported by the record. In making this determination, we must consider only the evidence of the prosecution's witnesses, and so much evidence of the defense that remains uncontradicted when fairly read in the context of the record as a whole. When the evidence supports the factual findings, we are bound by such findings; we may reverse only if the legal conclusions drawn therefrom are erroneous.

*Commonwealth v. Medley,* 531 Pa. 279, 612 A.2d 430 (1992).

In 1972, the Pennsylvania General Assembly enacted the Controlled Substance, Drug, Device and Cosmetic Act (the "Controlled Substance Act"), 35 P.S. §§ 780–101 *et seq.,* replacing the Drug, Device and Cosmetic Act of 1961. The Controlled Substance Act provides, in pertinent part:

### § 780–113. Prohibited act; penalties

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

(31) Notwithstanding other subsections of this section, (i) the possession of a small amount of marihuana only for personal use; (ii) the possession of a small amount of marihuana with the intent to distribute it but not to sell it; or (iii) the distribution of a small amount of marihuana but not for sale.

\* \* \* \* \* \*

(g) Any person who violates clause (31) of subsection (a) is *guilty of a misdemeanor and upon conviction thereof shall be sentenced to imprisonment not exceeding thirty*

---

4. Appellee contends the Commonwealth has waived the claim presented in this appeal for failure to preserve the issue at the suppression hearing. Examination of the record, however, indicates the Commonwealth did challenge consistently the classification of possession of marijuana as a summary offense at the suppression hearing and in its subsequent briefs and argument. This claim is entirely without merit, and we need not address it further.

*days, or to pay a fine not exceeding five hundred dollars ($500), or both.*

35 P.S. § 780–113(a)(31), (g) (emphasis added).

Notwithstanding the above classification of a violation of section (a)(31) as a misdemeanor, appellee argued the penalty imposed by section (g) was within the range of summary offenses as provided in the Crimes Code, 18 Pa.C.S. *et seq.,* and Sergeant Reilly improperly arrested appellee for his possession of marijuana, rather than issuing him a citation for a summary offense. Although the trial court agreed with appellee's position, this Court cannot.

Appellee premised his argument in part on a section of the Crimes Code dealing with summary offenses. The Crimes Code provides:

(c) **Summary offenses.**—An offense defined by this title constitutes a summary offense if:

(1) it is so designated in this title, or in a statute other than this title; or

(2) if a person convicted thereof may be sentenced to a term of imprisonment, the maximum of which is not more than 90 days.

18 Pa.C.S. § 106(c). The Crimes Code goes on to provide "[a]n offense hereafter defined by any statute other than this title shall be classified as provided in this section." 18 Pa.C.S. § 106(e).

■ "It is recognized that the legislature has the exclusive power to pronounce which acts are crimes, to define crimes, and to fix the punishment for all crimes." *Commonwealth v. Church,* 513 Pa. 534, 544, 522 A.2d 30, 35 (1987). The legislature also has the sole power to classify crimes. *Id.* To that end, the General Assembly reclassified in the Controlled Substance Act possession of marijuana from a felony to a misdemeanor, and the penalties for violation were reduced accordingly. *Commonwealth v. Sutley,* 474 Pa. 256, 378 A.2d 780 (1977).

Nevertheless, appellee contends the provisions of section 106(c)(2) prevail over the provisions of the Controlled Sub-

stance Act. In support of this claim, appellee cites the following provision of the Statutory Construction Act:

§ 1935. **Irreconcilable statutes passed by same General Assembly**

Whenever the provisions of two or more statutes enacted finally during the same General Assembly are irreconcilable, the statute latest in date of final enactment . . . shall prevail from the time it becomes effective. . . .

1 Pa.C.S. § 1935. Therefore, under appellee's theory, because the Crimes Code was enacted in December, 1972 and the Controlled Substance Act in April, 1972, "any contradiction between Section 106 of the Crimes Code and Section 780–113(g) of the Controlled Substance Act regarding the definition of a summary offense must be resolved in favor of the Crimes Code definition" (Brief of Appellee at 15).

 The Statutory Construction Act, however, at section 1933, **Particular controls general,** also provides:

Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

*Id.* "The practical application of this policy does not permit prosecutions under general provisions of a penal code when special penal provisions apply." *Commonwealth v. Evans,* 393 Pa.Super. 500, 574 A.2d 1051 (1990). In attempting to ascertain the meaning of a statute, we are required to consider the intent of the legislature and are permitted to examine the practical consequences of a particular interpretation. *Commonwealth v. Stewart,* 375 Pa.Super. 585, 544 A.2d 1384 (1988). We are to presume the legislature did not intend a result that is absurd or unreasonable. 1 Pa.C.S. § 1922(1); *Commonwealth v. Martorano,* 387 Pa.Super. 151, 563 A.2d 1229 (1989). In construing legislative intent, the Court may

460

look to the occasion and necessity of a statute, the circumstances in which it was enacted, the mischief to be remedied, the object to be attained by law, former law on the same subject and what the consequences of a particular interpretation would be. 1 Pa.C.S. § 1921(c)(1–6); *Commonwealth v. Snyder*, 385 Pa.Super. 58, 560 A.2d 165 (1989). In this regard, we find merit in the Commonwealth's reliance on the analogous situation presented in *Commonwealth v. Bidner*, 282 Pa.Super. 100, 422 A.2d 847 (1980). In *Bidner*, the defendant was charged with violations of the Crimes Code and the Election Code, 25 P.S. § 3502, dealing with false statements made for purposes of voter registration. The trial court quashed the bill of information under the Crimes Code, holding defendant should have been charged under the Election Code. This Court affirmed, citing 1 Pa.C.S. § 1933 and stating:

> Preliminarily, we note that we divine no "manifest intention" of the legislature that, ... the Crimes Code is to prevail over ... the Election Code. Indeed, it has been observed that "this [Crimes] Code does not apply to or include offenses in other distinct areas of the law where an offense is defined and the penalty therefor is provided, such as the Vehicle Code, Liquor Code, etc." Toll, Pa. Crimes Code Annotated, p. 25 (1974). Since the Election Code establishes its own comprehensive scheme of offenses and penalties, 25 P.S. §§ 3501–3553, it would seem that the legislature intended to accord special treatment to this area of criminal conduct to the exclusion of the more general provisions of the Crimes Code. Moreover, the legislature has recently amended certain sections of the election laws penalty provisions, thus manifesting its intention that the Election Code remains viable and should continue to govern whenever the misconduct appertains to elections. We thus conclude that the Crimes Code was not meant to prevail over the specific penalty measures of the Election Code.

*Id.* at 106, 422 A.2d at 850 (footnotes omitted).

So too, in this case, we discern no "manifest intention" of the legislature that the Crimes Code is to prevail over

the Controlled Substance Act. Just as in the Election Code, the Controlled Substance Act clearly and specifically enumerates "its own comprehensive scheme of offenses and penalties," and thus "it would seem that the legislature intended to accord special treatment to this area of criminal conduct to the exclusion of the more general provisions of the Crimes Code." At a minimum, we find it unreasonable to presume the legislature would intend or desire to have the specifics of its comprehensive Controlled Substance Act nullified by general provisions of a general Crimes Code not particularly intended for narcotics offenses.

We also find compelling in favor of the Commonwealth the final provision of section 106: "An offense *hereafter* defined by any statute other than this title shall be classified as provided in this section." 18 Pa.C.S. § 106(e) (emphasis added). Appellee contends "hereafter" as employed in section 106(e) means "after the effective date of this act, offenses defined in any other statute are to be classified as provided in section 106" (Brief of Appellee at 17). Such an interpretation takes the term "hereafter" out of its proper context and runs afoul of that portion of the Statutory Construction Act which states that "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa.C.S. § 1903(a); *Commonwealth v. Carr*, 334 Pa.Super. 459, 483 A.2d 542 (1984). Rather, we find the syntax of section 106(e) compels the eminently reasonable conclusion that the grading scheme in section 106 applies only to offenses "hereafter defined by any statute other than this title," and not to offenses previously defined by other statutes, such as the offenses defined in the Controlled Substance Act prior to the effective date of section 106. The word "hereafter" directly follows the reference to offenses and it is natural to assume it modifies the reference to offenses. *Commonwealth v. Williams*, 525 Pa. 216, 579 A.2d 869 (1990) (modifiers generally apply to the language that immediately precedes them). To give section 106 the effect appellee favors, it would have to read: "An offense defined by any statute other than this title shall be classified *hereafter* as provided in this

section." It, therefore, must be presumed the legislature intended the reasonable result attained by our reading of the Crimes Code and the Controlled Substance Act, a reading which gives effect to both statutes. 1 Pa.C.S. § 1922(1), (2); 1933.

Finally, although appellee bases his contention that possession of marijuana is a summary offense rather than a misdemeanor under 35 P.S. § 780–113(g), despite section 780–113(g)'s express classification of the offense as a misdemeanor, because the statute also provides for a sentence of thirty days, we find the basis for appellee's contention, section 106 of the Crimes Code, read in its entirely, does not support his claim. Section 106(b)(9) states: "A crime declared to be a misdemeanor, without specification of degree, is of the third degree." 18 Pa.C.S. § 106(b)(9). Section 106(b)(9), therefore, encompasses offenses declared to be misdemeanors, whether or not they are defined in the Crimes Code. We find the express classification of possession of marijuana as a misdemeanor in the Controlled Substance Act is clear evidence of the General Assembly's intent to grade the offense as a misdemeanor rather than a summary offense, notwithstanding that the sentence for the offense is consistent with a summary offense. Obviously the legislature intended offenders in this class to be subject to immediate arrest and search even though the penalty to be imposed was less than the usual penalty for a misdemeanor. Drugs in our society are so ubiquitous and the likelihood is so great that a mere user would be in possession of larger amounts, possibly for sale, a special legislative treatment was required to provide the police with greater enforcement powers to meet the problem.

For the foregoing reasons, we find Sergeant Reilly had probable cause to arrest appellee for a misdemeanor committed in his presence, and in a lawful search incident to the arrest, seized the additional marijuana and cocaine on appellee's person. We further find, as a consequence, the court erred in suppressing this evidence. We now reverse and remand for trial on all charges.

Order reversed; remanded for trial. Jurisdiction relinquished.